**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **JANE DOE,**<br><br>  **PLAINTIFF,**<br><br>-- against --<br><br>**THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK AND WILLIAM V. HARRIS**<br><br>  **DEFENDANTS.** |

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, Sanford Heisler Sharp, LLP, brings this action against The Trustees of Columbia University in the City of New York ("Columbia University," "Columbia," or "the University"), and Defendant William V. Harris ("Professor Harris"). Plaintiff alleges upon knowledge concerning her own acts and upon information and belief as to all other matters.

**I.  OVERVIEW**

1. Columbia University is one of the top research universities in the world. To match its academic reputation, Columbia touts its campus as a safe and nurturing learning environment for all students and employees.

2. On Columbia's online homepage, the University advertises its "commit[ment] to providing a learning, living, and working environment free from unlawful discrimination and harassment and fostering a nurturing and vibrant community founded upon the fundamental dignity and worth of all its members."

3. In addition, the University's policy regarding "Consensual Relationship[s] Between Staff Members" states that "Staff members at Columbia should not participate in hiring,

1

supervision, employment actions, evaluation, decisions pertaining to promotion, or the direct setting of salary or wages, for someone employed at Columbia with whom that person has or has had a consensual romantic or sexual relationship except in unusual circumstances."

4.      The University's "Consensual Romantic and Sexual Relationship Policy Between Faculty and Students" states that it is the "policy of the University that no faculty member shall have a consensual romantic or sexual relationship with a student over whom he or she exercises academic authority," including "formally mentoring [a] student," or "co-authoring papers or working collaboratively on a project." It is also the University's policy that "no faculty member shall exercise academic or professional authority over any student with whom he or she has or previously has had a consensual romantic or sexual relationship."

5.      To many women of Columbia University, that "policy" is a sham and a cruel joke. For decades, women at Columbia have suffered serial sexual harassment committed by Professor William Vernon Harris—a tenured faculty member who has taught at the University for more than 50 years. Harris is one of the University's most distinguished academicians, and a gatekeeper to success at Columbia and in the broader academic world.

6.      Professor Harris's recommendations can secure desirable academic opportunities for budding scholars and prove instrumental for faculty members working to secure tenure at Columbia and elsewhere. Upon information and belief, Professor Harris has wielded his power to seek inappropriate sexual gratification.

7.      Upon information and belief, on multiple occasions, Professor Harris forcibly touched female students and on multiple occasions he demanded that students sleep with him.

8.      Professor Harris's sexually exploitive behavior is longstanding and well known at Columbia. Upon information and belief, a number of Professor Harris's victims complained to

Columbia about Harris's misconduct, long before Plaintiff joined the University. Columbia, however, never took any meaningfully disciplinary action against Professor Harris, upon information and belief.

9.    Although Columbia pays lip-service to the ideals of a safe campus environment, the University has a track-record of violating Title IX when responding to reports of sexual misconduct. When students have reported sexual harassment to Columbia's administrators, officers, and employees (such agents, unless referred to by name or position, hereinafter referred to as "Columbia"), Columbia has shown deliberate indifference to their complaints. In responding to complaints of sexual harassment, the University fails to sanction appropriately Columbia faculty members who hold prominent positions in their fields and are believed to contribute to the University's reputation or financial position.

10.    In 2014, Columbia became the subject of a formal investigation by the Office of the Civil Rights, part of the United States Department of Education, related to its compliance with Title IX, 20 U.S.C. § 1681 ("Title IX"), when responding to complaints of sexual harassment.

11.    Columbia's failure to ensure a safe environment for learning and teaching has been particularly acute with respect to Plaintiff, an employee of, and Ph.D. student at, the University.

12.    Plaintiff was one of Professor Harris's victims. She joined Columbia as a graduate student with tremendous promise.  However, in the spring of 2014, Professor Harris began subjecting Plaintiff to sexual harassment, after ingratiating himself as an informal mentor and then recruiting Plaintiff to work for him.

13.    Over the course of 2014 and 2015, Professor Harris pressured Plaintiff for inappropriate and unwanted sexual contact with him on a regular basis, both in and outside of the academic environment.

3

14.     When the abuse began, Plaintiff was 26 years old; Professor Harris was 76 years old.

15.     After Plaintiff rejected Professor Harris's sexually inappropriate advances, he retaliated against Plaintiff, including by disparaging her professionalism to colleagues and students at Columbia.

16.     As a result of Professor Harris's actions, Plaintiff was subjected to harassment based on her gender. This harassment was sufficiently severe and pervasive to create a continuing and persistent abusive work and educational environment because of Columbia's deliberate indifference.

17.     Columbia's response to the sexual harassment so undermined and detracted from Plaintiff's educational experience that Plaintiff was effectively denied access to educational resources, benefits and opportunities.

18.     Plaintiff brings claims under the New York City Human Rights Law, New York City Administrative Code, §8-107, *et seq*. ("NYCHRL"); Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 *et seq.* ("Title IX"); and New York common law. Plaintiff seeks damages to redress the injuries she has suffered as a result of being sexually harassed and discriminated against on the basis of her gender by Defendants.

## II.     THE PARTIES

19.     **PLAINTIFF** is a 29-year-old Ph.D. student at, and employee of, Columbia University. Plaintiff served an instructor at Columbia over the course of six semesters. At all relevant times, Plaintiff was and is domiciled in Manhattan, and she works for and attends Columbia University in Manhattan.

20.     **DEFENDANT THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK** ("Columbia University," "Columbia," or "the University") is a private university that, upon information and belief, receives federal funding.  Columbia is based in Manhattan.

21.     **DEFENDANT WILLIAM V. HARRIS** is a 79-year-old scholar of the Greco-Roman world. Since 1965, he has been on the History faculty of Columbia University, and since 1995 he has served as the University's William R. Shepherd Professor of History.  He is a Fellow of the American Academy of Arts & Sciences, and he was awarded the Distinguished Achievement Award by the Andrew W. Mellon Foundation in 2008.

22.     Professor Harris serves as the longtime director of the Center for the Ancient Mediterranean ("CAM"), an interdisciplinary center of Columbia University. In his capacity as CAM's director, Professor Harris exercises complete control over travel grants, publications and conferences that Columbia offers under the CAM rubric.

23.     At all relevant times, Professor Harris was and is domiciled in Manhattan, and he works for Columbia University in Manhattan.

III.    <u>**JURISDICTION AND VENUE**</u>

24.     This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 because this action involves claims brought under Title IX.  This Court has supplemental jurisdiction over Plaintiff's claims under the New York City Human Rights Law and New York common law pursuant to 28 U.S.C. § 1367.

25.     Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f).  Defendant Columbia is headquartered in this District, and Defendant Harris is domiciled in

this District. The unlawful educational and employment practices complained of herein occurred in this District, and the events or omissions giving rise to Plaintiff's claim occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Plaintiff's Educational and Professional Background

26.    Plaintiff earned her Bachelor of Arts degree with honors in 2009, and received a prestigious departmental award for best thesis by an undergraduate.

27.    Since matriculating to Columbia, Plaintiff has authored ten conference papers, an exceptional number; won recognition from faculty members as a top performer; and built a strong record of departmental service.

28.    During her tenure at Columbia, Plaintiff served as an instructor over the course of six semesters.

### B.  Professor Harris Offers to Help Plaintiff with Her Career and Hires Her to Work for Him

29.    During the spring semester of 2014, Plaintiff became acquainted with Professor Harris while attending a lecture series at the University. At the time, Plaintiff was a 26-year-old woman in her second year of graduate school, and Professor Harris was 75 years old.

30.    Professor Harris invited Plaintiff to participate in one-on-one supervised readings with him.

31.    Thereafter, in or about the spring of 2014, Plaintiff visited Professor Harris's office approximately once per week to discuss academic material. During one of their earlier meetings, Professor Harris stated, "I want to help your career."

32.    Professor Harris was lively and engaged during his initial study sessions with Plaintiff.

33.     Professor Harris also invited Plaintiff to work for him on a project, including to work as his co-editor on a publication.

34.     Plaintiff accepted Professor Harris's offer.

**C. Professor William V. Harris Sexually Harasses Plaintiff and Coerces Her into Unwanted Sexual Contact**

35.     During his initial mentorship of Plaintiff in the spring of 2014, Professor Harris repeatedly asked her personal questions and gleaned considerable information about her past traumatic experiences, including the suicide of her father when she was very young and the subsequent death of her stepfather. Over the course of this time period, Professor Harris ingratiated himself as a trusted confidant to Plaintiff.

36.     In or about the spring of 2014, Professor Harris began to make inappropriate and unwelcome comments to Plaintiff about her appearance, and repeatedly stated to Plaintiff that he found her attractive. In response, Plaintiff repeatedly expressed her discomfort with these comments.

37.     After Plaintiff ended her supervised reading with Professor Harris, he called her to his office approximately once to twice per week in the spring of 2014 to review matters related to her work for him.

38.     On one occasion, in or about the spring of 2014, Plaintiff was standing in front of the desk in the office of Professor Harris. Suddenly, and without warning, Professor Harris lunged forward, put his arms around Plaintiff, and started feeling up and down her back in a sexualized manner. Plaintiff froze in response. Professor Harris then took a step back and said, "I'm sorry, that wasn't appropriate, was it?"

39.     On a subsequent occasion, in or about the spring of 2014, Professor Harris forced Plaintiff against the desk in his office and kissed her.

7

40.      On another occasion, in or about the spring of 2014, Professor Harris suddenly, and without warning or permission, put his mouth on Plaintiff's breast.

41.      During the spring of 2014, Professor Harris repeatedly kissed and groped Plaintiff in his office, despite her obvious discomfort. He also intensified his pressure on Plaintiff for unwanted sexual contact.

42.      In or about this period, Professor Harris explicitly requested sexual intercourse with Plaintiff, which she refused.

43.      In or about the spring of 2014, Plaintiff served as an instructor in an introductory course. Per the department's policy, Plaintiff was required to have a faculty member observe her class, provide her with formal feedback, and submit a written report of the observation to the University.

44.      Professor Harris agreed to observe Plaintiff's class, which met in the early evening, and provide her with formal feedback.

45.      After the class concluded, at 8:00 p.m., Professor Harris took Plaintiff to dinner, ostensibly to provide her with feedback. However, during the dinner Professor Harris refused to discuss Plaintiff's performance, and instead spoke about her appearance and his desire for sexual intercourse with her. Professor Harris subsequently refused to complete the required written report for his class observation and told Plaintiff that people would know how much he liked her if he submitted the required report.

46.      Throughout 2014, Plaintiff continued to work for Professor Harris. During this period, he continually harassed Plaintiff and coerced her into unwanted sexual activity.

47.      In or about 2014, Professor Harris demanded that Plaintiff send him sexually explicit emails. On one occasion, Professor Harris sent Plaintiff a pornographic narrative, and

demanded that she respond and they discuss the exchange. Professor Harris continued to press Plaintiff for sexual contact.

48.     In response to Plaintiff's obvious emotional distress, Professor Harris accused her of being "too emotional."

49.     Throughout 2014 and 2015, Professor Harris continued to pressure Plaintiff to engage in sexual activity with him.

50.     Professor Harris's advances were unwanted by Plaintiff and she was emotionally traumatized as a result of his sexually coercive behavior.

51.     In June of 2014, Plaintiff sent Professor Harris a copy of the Columbia sexual harassment policy. Professor Harris replied by email and dismissed the policy.

52.     On July 1, 2014, Plaintiff informed Professor Harris via email that she was "no longer comfortable" working for Professor Harris. She stated, "I feel very strongly that going forward we should only see each other in professional contexts and never alone."

53.     Professor Harris responded via email that Plaintiff's reasoning was "totally insubstantial and/or mistaken…." Nonetheless, Professor Harris stated that he was prepared to work with Plaintiff "on an impersonal level."

54.     After this exchange, Plaintiff continued to work for Professor Harris to avoid a negative impact upon her academic career.

55.     Subsequently, Professor Harris began once again to touch Plaintiff inappropriately and resumed pressuring her for sexual contact.

56.     On one occasion, Professor Harris claimed that he thought he could be like a "father" to Plaintiff through sexual intimacy with her. As Professor Harris was aware, Plaintiff

had experienced the death of her father in childhood and step-father when she was twenty-one years old.

57.     Professor Harris also was aware that Plaintiff's mother was, at that time, undergoing treatment for cancer, and Plaintiff was emotionally distraught.

58.     In or about May 2015, Professor Harris accompanied a group of graduate students, including Plaintiff, on a research trip funded by Columbia.  During the trip, Professor Harris treated Plaintiff inappropriately, leading Plaintiff to suffer public humiliation before her academic colleagues and causing her reputational harm.

59.     Directly following the trip, Professor Harris coerced Plaintiff to travel alone with him on a side trip. He promised repeatedly that the trip would be strictly professional and that he had booked separate hotel rooms for each of them.

60.     Plaintiff accompanied Professor Harris on the side trip. In fact, Professor Harris had booked only one hotel room. That evening, Professor Harris pressed Plaintiff for sexual contact in the hotel room, even as she refused his sexual advances.

61.     The following morning, Plaintiff began to make arrangements to leave the premises.

62.     In response, Professor Harris angrily stated that she had "ruined" their trip and that he would be "offended" if she left. Professor Harris's intense rage led Plaintiff to fear for the future of her academic career.

**D. Professor Harris Inflicts Extreme Psychological Distress Upon Plaintiff, Forcing Her Withdrawal; When Plaintiff Ends Contact with Harris, He Retaliates**

63.     Following the incidents on the research trip, Plaintiff experienced psychological distress so extreme that she had difficulty reading. Plaintiff withdrew from Columbia for the 2015-2016 academic year, including from all teaching responsibilities, and underwent counseling.

10

64.      In January 2016, Plaintiff withdrew from all work with Professor Harris on his publication. To ensure no impact on Professor Harris's work, Plaintiff found a male candidate willing to replace her; however, Professor Harris refused to work with him.

65.      In response to Plaintiff's withdrawal from the publication, Professor Harris retaliated against her, including, upon information and belief, by disparaging her to students and faculty at Columbia.

66.      Upon information and belief, Professor Harris told academics at Columbia that Plaintiff irresponsibly abandoned the publication project without due cause.

67.      Upon information and belief, Professor Harris stated to one graduate student that "if [Plaintiff] wanted a career in this field she shouldn't have dropped out of the project."

68.      In the fall of 2016, one Columbia professor stated to Plaintiff that she should be concerned that Professor Harris would sabotage her when she went on the job market.

69.      Professor Harris periodically emailed and called Plaintiff until the spring of 2017. He often made coercive and harassing comments, including accusing her of failing "to have the courage to stay loyal to [her] old friend."

70.      On April 24, 2017, Plaintiff emailed Professor Harris and stated she "no longer wish[es] to have any form of contact with [him]."

71.      From 2014 through 2017, Professor Harris continually engaged in sexual harassment to initiate and perpetuate a sexual relationship with Plaintiff.

72.      Professor Harris, aware of his position of power, understood his conduct violated sexual harassment policies and was beyond all possible bounds of decency.

73.      Professor Harris owed a duty of care to Plaintiff, and the breach of this duty caused an unreasonable risk of physical and psychological harm to her.

**E. Columbia Had Actual Notice of Professor Harris's Harassment and Was Deliberately Indifferent to His Conduct**

74.    Columbia had actual notice of Professor Harris's harassment, and was deliberately indifferent to this harassment, both before and after the harassment of Plaintiff occurred.

75.    Professor Harris has taught at Columbia for more than 50 years.

76.    Upon information and belief, throughout his tenure Professor Harris has harassed female assistants, students, and fellow faculty members.

77.    Upon information and belief, Columbia has known about Professor Harris's abusive and vindictive conduct toward women at the University.

78.    Plaintiff is only one of the most recent women who have experienced Professor Harris's sexual harassment.

79.    Plaintiff's harassment was enabled and encouraged by Columbia's longstanding history of willfully ignoring Professor Harris's history of sexualized behavior and harassment.

80.    When Plaintiff reported Professor Harris's harassment to Columbia, the University once again turned a blind eye towards Professor Harris's conduct.

81.    Plaintiff disclosed to various professors, on a number of occasions from the spring of 2016 to the fall of 2017, that Professor Harris was harassing her. In response, multiple faculty members were dismissive of Plaintiff's complaints, and/or did not take takes steps to protect Plaintiff and other members of the Columbia community. Multiple professors stated that they were not surprised by Plaintiff's complaint.

82.    In the summer of 2017, Plaintiff notified Columbia's Title IX Coordinator, Associate Vice President Marjory Fisher, of Professor Harris's conduct and requested that Columbia grant Plaintiff accommodations for the 2017-2018 academic year, to allow her to fully participate in educational life.

12

83.     Despite Plaintiff's request that Professor Harris be restricted in his access to the building in which Plaintiff's department and office are housed, Columbia scheduled Professor Harris to teach a course in the building on two afternoons per week. Title IX Coordinator Fisher advised Plaintiff that the building has only one entrance, and that Plaintiff might encounter Professor Harris should she choose to enter or exit the building during his classes. Accordingly, Ms. Fisher advised Plaintiff to stay within her office during his scheduled classes, or forgo access to the building entirely.

84.     In addition, although Plaintiff requested that Professor Harris be barred from attending the speaker series organized by graduate students in Plaintiff's department, Columbia granted Professor Harris permission to attend the initial lecture of the school year.

85.     Columbia allowed Professor Harris to fully retain his position as a teaching professor at the University and as the director of the University's Center for the Ancient Mediterranean ("CAM"), and to interact closely with numerous female students and staff. In his capacity as CAM's director, Professor Harris oversees and attends a year-long lecture series and awards travel research grants to graduate students studying the ancient world.

86.     Due to Professor Harris's history of harassment, Plaintiff is unable to attend CAM lectures or events without accommodation, and the University has taken no steps accommodate Plaintiff's participation in CAM activities or utilization of resources at CAM.

87.     As a result of Columbia's actions and inaction, Plaintiff is effectively denied access to academic and professional resources.

88.     Upon information and belief, following Plaintiff's notification of the University of Professor Harris's conduct, Columbia failed to take action to prevent Professor Harris from engaging in improper contact with other employees and students.

89.     As a result of Columbia's actions and inaction, Professor Harris, an employee under the University's supervision and control, harassed Plaintiff.

90.     Columbia's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

91.     Columbia's response to Plaintiff's report of sexual harassment was clearly unreasonable in light of the known circumstances.

92.     Columbia knew, or in the exercise of reasonable care should have known, that Professor Harris was not fit for a position in which he would be working with young, female students. Nonetheless, the University retained Professor Harris and failed to provide adequate supervision.

**F.  Plaintiff Suffers Physical, Emotional, Reputational and Financial Harms**

93.     Defendants' actions altered and worsened the condition of Plaintiff's environment at Columbia. Defendants' conduct was so severe, pervasive, and/or objectively offensive that it deprived her of access to educational opportunities or benefits provided by Defendants.

94.     Plaintiff worries that she will encounter Professor Harris on campus.

95.     As a result of the actions of Professor Harris and Columbia, Plaintiff suffers and has suffered from physical and psychological injuries, including:

i.      Bruising;

ii.     Insomnia and generalized anxiety;

iii.    Substantial weight loss;

iv.     Avoidance of places where she may encounter Professor Harris;

v.      Sense of betrayal;

vi.     Strong sense of guilt and shame;

vii.      Extreme difficulty concentrating and inability to read;

viii.     Dissociation after encountering reminders of sexual harassment;

ix.      Sexually disturbing and violent nightmares and memories; and

x.      Feelings of despair and hopelessness.

96.     Plaintiff's emotional distress and mental anguish were so severe that she was forced to withdraw from the University for the 2015-2016 academic year and to seek counseling.

97.     As a result of Defendants' unlawful conduct, Plaintiff has also suffered substantial reputational harm to her academic career.  Due to her harassment during the 2014-2015 school year, Plaintiff developed a temporary inability to read and therefore initially performed poorly on a comprehensive examination required for her completion of a Ph.D.

98.     In addition, Plaintiff was forced to publicly withdraw from her work for Professor Harris to co-edit an academic publication, and Professor Harris disparaged her to colleagues regarding the withdrawal.

99.     Plaintiff's leave of absence also set her back considerably in terms of her progress towards a Ph.D.

100.    These events have inflicted significant reputational damage to Plaintiff's career, resulting in damage to her future career prospects.

101.    Plaintiff has suffered significant financial losses, and will incur further financial losses in the future.

15

## V.    COUNTS

### COUNT I

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—
GENDER DISCRIMINATION IN TERMS, CONDITIONS, AND PRIVILEGES
New York City Administrative Code § 8-107
(Against All Defendants)**

102.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

103.    Plaintiff is a female employee of Columbia and student at the University.

104.    Defendant Harris—a senior, tenured faculty member at Columbia University—is an employee and agent of Defendant Columbia.  During all times relevant to this claim, Defendant Harris functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment and educational environment.

105.    Defendant Harris participated in the conduct giving rise to this claim.  He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

106.    Defendants have subjected Plaintiff to discrimination in the terms, conditions, or privileges of employment and public accommodation in violation of the New York City Human Rights Law.  Defendants have treated Plaintiff differently from and less preferably than similarly situated male employees and students.

107.    Plaintiff's sex has been a determining factor in Defendants' subjecting of Plaintiff to discrimination in the terms, conditions, or privileges of employment and public accommodation.

108.    By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

109.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment and educational

opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

110.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT II

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—**
***QUID PRO QUO* SEXUAL HARASSMENT**
**New York City Administrative Code § 8-107**
**(Against All Defendants)**

111.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

112.    Plaintiff is a female employee of Columbia and student at the University.

113.    Defendant Harris—a senior, tenured faculty member at Columbia University—is an employee and agent of Defendant Columbia.  During all times relevant to this claim, Defendant Harris functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment and educational environment.

114.    Defendant Harris participated in the conduct giving rise to this claim.  He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

115.    Defendants subjected Plaintiff to unwelcome *quid pro quo* sexual harassment based on her sex.  Defendants subjected Plaintiff to unwelcome sexual conduct, including sexual comments, sexual advances, and coerced sexual conduct.

116.    Plaintiff's reaction to that conduct was used as the basis for decisions affecting the terms, conditions, or privileges of her employment and status as a student at Columbia.  Among

other things, as a result of Plaintiff's rejection of Professor Harris's sexual advances, Professor Harris inflicted reputational harm upon Plaintiff.

117.    A reasonable woman would consider that she was being treated less well than other employees and students under all the circumstances.  Plaintiff actually considered that she was being treated less well than other employees and students because she is female.

118.    A reasonable person would have considered the conduct to be significant and not trivial or petty.  Plaintiff actually considered the conduct to be significant and not trivial or petty.

119.    Defendants created, enabled, and maintained a sexually hostile work environment.

120.    Defendant Columbia knew of Defendant Harris's conduct and accepted it and/or failed to take immediate and appropriate corrective action.

121.    Moreover, in the exercise of reasonable care, Defendant Columbia should have known of Defendant Harris's conduct and failed to exercise reasonable diligence to prevent such conduct.

122.    Defendant Columbia lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees and agents, and for taking appropriate action against those persons who are found to have engaged in such practices.

123.    Defendant Columbia fails to effectively communicate a firm policy against such practices to its employees and agents.

124.    Defendant Columbia lacks a program to educate employees and agents about unlawful discriminatory practices under local, state, and federal laws.

125.    Defendant Columbia lacks procedures for the supervision of employees and agents specifically directed at the prevention and detection of such practices.

126.    By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

127.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

128.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

<u>**COUNT III**</u>

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—
HOSTILE WORK and EDUCATIONAL ENVIRONMENT
New York City Administrative Code § 8-107
(Against All Defendants)**

129.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

130.    Plaintiff is a female employee of Columbia and student of the University.

131.    Defendant Harris—a senior, tenured faculty member at Columbia University—is an employee and agent of Defendant Columbia.  During all times relevant to this claim, Defendant Harris functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment and educational environment.

132.    Defendant Harris participated in the conduct giving rise to this claim.  He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

19

133.    Defendants subjected Plaintiff to a hostile work and educational environment based on her sex.  The hostile environment included sexual comments, sexual advances, and coerced sexual conduct.  All of this conduct was unwanted.

134.    A reasonable woman would consider that she was being treated less well than other employees and students under all the circumstances.  Plaintiff actually considered that she was being treated less well than other employees and students because she is female.

135.    A reasonable person would have considered the conduct to be significant and not trivial or petty.  Plaintiff actually considered the conduct to be significant and not trivial or petty.

136.    Defendants created, enabled, and maintained a sexually hostile work environment.

137.    Defendant Columbia knew of Defendant Harris's conduct and accepted it and/or failed to take immediate and appropriate corrective action.

138.    Moreover, in the exercise of reasonable care, Defendant Columbia should have known of Defendant Harris's conduct and failed to exercise reasonable diligence to prevent such conduct.

139.    Defendant Columbia lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees and agents, and for taking appropriate action against those persons who are found to have engaged in such practices.

140.    Defendant Columbia fails to effectively communicate a firm policy against such practices to employees and agents.

141.    Defendant Columbia lacks a program to educate employees and agents about unlawful discriminatory practices under local, state, and federal laws.

142.    Defendant Columbia lacks procedures for the supervision of employees and agents specifically directed at the prevention and detection of such practices.

20

143.     By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

144.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

145.     Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT IV

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,
AS AMENDED —
GENDER DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT and
EDUCATION
20 U.S.C. § 1681 *et seq.*
(Against Defendant Columbia)**

146.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

147.     Upon information and belief, at all times relevant to this action, Columbia has received, and continues to receive, federal financial assistance.

148.     Defendant Columbia has discriminated against Plaintiff by subjecting her to different treatment on the basis of her gender.

149.     Defendant Columbia has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated male employees and by subjecting her to disparate terms and conditions of employment and education in violation of Title IX.

150.     Defendant Columbia's differential treatment of Plaintiff is a direct and proximate

result of gender discrimination.

151.    Defendant Columbia has failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination.

152.    By reason of the continuous nature of Defendant Columbia's discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

153.    As a result of Defendant Columbia's unlawful discrimination, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

154.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including back pay, front pay, compensatory damages, attorneys' fees and costs, and other appropriate relief.

## COUNT V

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,
AS AMENDED —
*QUID PRO QUO* SEXUAL HARASSMENT
20 U.S.C. § 1681 *et seq.*
(Against Defendant Columbia)**

155.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

156.    Upon information and belief, at all times relevant to this action, Columbia has received, and continues to receive, federal financial assistance.

157.    Defendant Columbia has discriminated against Plaintiff by creating and maintaining a hostile work and educational environment where an ongoing, severe, or pervasive pattern and practice of sexual harassment persists in violation of Title IX.

158.    Plaintiff was subject to unwelcome *quid pro quo* sexual harassment based on her sex.  Plaintiff was subject to unwelcome sexual conduct, including sexual comments, unwanted touching, and unwanted sexual advances.

159.    A cognizable basis for liability against Columbia exists as this educational institution receives federal funds, had actual notice of Defendant William V. Harris's harassment, and was deliberately indifferent to this harassment, both before and after the harassment of Plaintiff occurred.

160.    Plaintiff's reaction to that conduct was used as the basis for decisions affecting the compensation, terms, conditions, or privileges of her employment and education.  Among other things, as a result of Plaintiff's rejection of Professor Harris's sexual advances, Professor Harris, facilitated by Columbia, obstructed Plaintiff's ability to research and publish her works.

161.    Professor Harris acted in a managerial or supervisory capacity towards Plaintiff.

162.    In addition, Defendant Columbia knew of Professor Harris's conduct and accepted it and/or failed to take immediate and appropriate corrective action.  Plaintiff and others repeatedly complained about Professor Harris's conduct to Columbia.

163.    The *quid pro quo* sexual harassment altered Plaintiff's conditions of employment by creating an abusive working environment for her.

164.    Defendant Columbia's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Plaintiff's rights, entitling her to punitive damages.

165.    By reason of the continuous nature of Defendant Columbia's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

166.    As a result of Defendant Columbia's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

167.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including back pay, front pay, compensatory damages, attorneys' fees and costs, and other appropriate relief.

**COUNT VI**

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,
AS AMENDED —
HOSTILE WORK and EDUCATIONAL ENVIRONMENT
20 U.S.C. § 1681 *et seq.*
(Against Defendant Columbia)**

168.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

169.    Upon information and belief, at all times relevant to this action, Columbia has received, and continues to receive, federal financial assistance.

170.    Defendant Columbia has subjected Plaintiff to a sexually hostile work and educational environment in violation of Title IX.

171.    Defendant Columbia has denied Plaintiff her personal right to work and learn in an environment free of sexual harassment.

172.    Defendant Columbia's discriminatory and harassing practices have been, and

continue to be, sufficiently severe or pervasive to create an environment that is both subjectively and objectively hostile, abusive, and retaliatory, and Defendant Columbia tolerated, condoned, ratified, and/or engaged in the hostile work and educational environment, or, in the alternative, knew, or should have known, of its existence and failed to take remedial action.

173.    By reason of the continuous nature of Defendant Columbia's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

174.    As a result of Defendant Columbia's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

175.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including back pay, front pay, compensatory damages, attorneys' fees and costs, and other appropriate relief.

## COUNT VII

### NEGLIGENT SUPERVISION AND RETENTION
### (Against Defendant Columbia)

176.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

177.    Columbia owed a duty of care to protect Plaintiff from sexual harassment, which was unwarranted, unwanted and improper.

178.    Columbia breached its duty in its training, supervision and retention of Defendant William V. Harris, an employee that Columbia knew, or in the exercise of reasonable care should have known, was unfit to work with young, female students.

179.   As a direct and proximate result of Columbia's breach of its duty, Plaintiff was subjected to sexual harassment by Professor William V. Harris.

180.   Plaintiff suffered damages and injuries for which Columbia is liable under state law.

## COUNT VIII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant William V. Harris)

181.   Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

182.   Defendant William V. Harris owed Plaintiff a duty of care, which he breached through sexually harassing her.

183.   As a direct and proximate result of Defendant Harris's breach of his duty, Plaintiff was subjected to sexual harassment by Professor William V. Harris.

184.   Plaintiff suffered damages and injuries for which Professor Harris is liable under state law.

## PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiff prays that this Court:

A.   Award Plaintiff all of her damages under the New York City Human Rights Law; Title IX of the Education Amendments of 1972, as amended, and common law, including back pay, front pay, compensatory damages, and punitive damages in an amount to be determined at trial.

B.   Award Plaintiff all attorneys' fees, costs, and expenses available under law;

C.   Award Plaintiff all pre-judgment interest and post-judgment interest available under law; and

26

D.      Award Plaintiff such additional and further relief as this Court may deem just and proper.

## VI.      **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable of right by jury.

Dated:  October 2, 2017                          Respectfully submitted,

_____
David Sanford (*pro hac vice* pending)
Jeremy Heisler (JH-0145)
Jennifer Siegel (JS-0270)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
jsiegel@sanfordheisler.com

*Attorneys for Plaintiff*